IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHAD A. CARRIGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-13-842-D |
| | ) | |
| MACHEAL GOREE,[1] LT. GOREE,[2] | ) | |
| TRUDY HOFFMAN, MONDAY,[3] | ) | |
| JONES,[4] and STEPHANIE BURKE, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, a prisoner appearing *pro se* and *in forma pauperis*, has filed this 42 U.S.C. § 1983 civil rights action alleging a violation of his constitutional rights. This case has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Plaintiff filed his original Complaint on August 8, 2013. (ECF No. 1). Michelle Goree, Charles Goree and "John or Jane Doe (Western State Hospital)" were named in the original Complaint.

On December 9, 2013, Plaintiff filed his first Amended Complaint adding additional defendants: William Monday (Deputy Warden); Sam Jones (Chief of Security); and Stephanie Burke (ODOC Internal Affairs)." (ECF No. 30). The Amended Complaint was never served, however, and is therefore irrelevant. On February 21, 2014, Plaintiff filed a Second Amended Complaint naming all defendants named in his

---

[1] According to her Motion to Dismiss (ECF No. 46), Defendant's first name is spelled "Michelle."
[2] According to his Motion to Dismiss (ECF No. 49), Defendant Goree's first name is Charles.
[3] According to his Motion to Dismiss (ECF No.49), Defendant Monday's first name is William.
[4] According to his Motion to Dismiss (ECF No. 49), Defendant Jones' first name is Sam.

Amended Complaint, and substituting Defendant Trudy Hoffman, identified as the Director of Northwest Center for Behavioral Health, for John or Jane Doe. (ECF No. 40).

Three motions to dismiss are pending: Defendant Trudy Hoffman has moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and Rule 12(b)(6) based on her assertion that some of the claims against her are barred by the statute of limitations and that the remaining claims are either barred by the Eleventh Amendment,[5] or are subject to dismissal based on her lack of personal participation. (ECF No. 46).

Defendant Michelle Goree's Rule 12(b)(6) motion to dismiss alleges that some, but not all, of the claims asserted against her are barred by the expiration of the statute of limitations (ECF No. 47).

The remaining defendants have filed a joint Rule 12(b)(6) motion to dismiss. (ECF No. 49). Defendant Charles Goree asserts that some, but not all, of Plaintiff's claims against him are barred by the statute of limitations. Defendants Monday, Jones and Burke allege that all of Plaintiff's claims against them are subject to dismissal because they did not become parties until Plaintiff filed and served his Second Amended Complaint, after the limitations period had expired.

For the following reasons, it is recommended (1) that the Motion to Dismiss filed by Defendant Trudy Hoffman (ECF No. 46) be **GRANTED**; (2) that the Motion to Dismiss filed by Michelle Goree (ECF No. 47) be **GRANTED** in part and **DENIED** in part; (3) that the Motion to Dismiss filed by Defendant Charles Goree (ECF No. 49) be

---

[5] Because Plaintiff sued all defendants in their individual capacities only, Eleventh Amendment sovereign immunity is not applicable.

2

**DENIED**; and that the Motion to Dismiss of Defendants Monday, Jones and Burke (ECF No. 49) be **GRANTED.**

## STANDARD OF REVIEW

Defendants urge dismissal based on Fed. R. Civ. P. 12(b)(6), which requires the court to consider whether Plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In determining whether a claim is "plausible," the court must "draw on its judicial experience and common sense." *Id.* at 679. "Pleadings that do not allow for at least a 'reasonable inference' of the legally relevant facts are insufficient." *Burnett v. Mortg. Elec. Regist. Sys, Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

Rule 12(b)(6) requires courts to assume the truth of all well-pleaded factual allegations in the complaint and construe them in the light most favorable to Plaintiff. *See Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990) (citations omitted).

## PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff's civil rights claims arose from a series of incidents occurring while he was an inmate at the William S. Keys Correctional Center (WSKCC), an Oklahoma Department of Corrections (ODOC) minimum security facility in Fort Supply, Oklahoma. During his tenure at WSKCC, Plaintiff was assigned to work at the Northwest Center for Behavioral Health (NCBH) where he performed housekeeping tasks under the direct

3

supervision of two employees of NCBH, known to Plaintiff only as "Shelly" and "Cary," and who, in turn, were supervised by an NCBH employee known to Plaintiff only as "Jayno."

At all times relevant to this action, Defendant Charles Goree was an officer at WSKCC, and his wife, Defendant Michelle Goree, was an employee at NCBH, where Plaintiff worked.

The crux of Plaintiff's Second Amended Complaint is that Defendants Charles Goree and his wife, Michelle Goree, caused him to be fired from his prison job and ultimately transferred to the disciplinary special housing unit of a medium security prison in retaliation for Plaintiff's having exercised his First Amendment right to seek relief, through the prison grievance system, from Charles Gore's harassment. Plaintiff specifically alleges that Defendants Charles and Michelle Goree conspired to retaliate against him after Charles Goree received an oral reprimand from prison officials as a result of Plaintiff's informal request to staff. Plaintiff alleges the retaliatory conduct of Michelle Goree was directly responsible for the unconstitutional retaliatory firing and transfer.

Plaintiff alleges that Charles Goree's inappropriate actions began on April 15, 2011, just before Plaintiff and his mother were to have a "level class 4" visitation. (Second Amended Complaint at 4). Plaintiff states that Charles Goree approached Plaintiff's mother and asked, "What kind of drugs are you bringing your son today?" (*Id.*). Within three days of this incident, Plaintiff verbally complained about the incident to his unit team staff members, Lonnie Lawson, Tonya Sexton and Vicky Lewis. Plaintiff

4

believes that after his report to his unit team staff members, one of his unit team members or some other prison official spoke to Goree about the reported incident. Plaintiff concluded that his informal attempt to resolve the conflict with Goree had been successful because for two months, Goree did not interact with him. But on June 25, 2011, Goree stopped Plaintiff and conducted a pat-down search and acted as though he had discovered and retrieved a baggie containing what appeared to be marijuana. When Goree showed the baggie to Plaintiff, and Plaintiff denied that the contraband was his. Goree replied, "It's not? But it could be that easy. I'm going to get you one day." (*Id.* at 5).

On June 28, 2011, within three days of Goree's pat-down search and threat, Plaintiff again filed a verbal complaint to his unit team members. The unit team told him that Goree would be instructed to stop bothering him. (*Id.*). On June 30, 2011, Plaintiff's case manager, Ms. Lewis, asked Plaintiff whether Goree was still bothering him. When Plaintiff answered no, Ms. Lewis stated, "It's because he was issued a verbal reprimand for his actions and instructed to stay away from you." (*Id.*).

On July 7, 2011, Plaintiff was unexpectedly terminated from his prison work assignment at NCBH. According to Plaintiff, Shelley, one of his supervisors at NCBH, told him, "Today is your last day with us." (*Id.*). When Plaintiff asked her why, Shelley initially stated that she was not allowed to tell Plaintiff why, but then added, "They're doing you so wrong." Ultimately, Shelley told Plaintiff that Defendant Michelle Goree had informed a supervisor named Jayno that Plaintiff was "a king pin drug dealer at the prison." Shelley told Plaintiff that he could finish working the rest of the day. (*Id.* at 6).

Plaintiff states that before he was fired on July 11, 2011, he did not know Michelle Goree worked at NBHC or that she was Charles Goree's wife. Given the sequence and timing of events, however, Plaintiff plausibly alleges that on or before July 7, 2011, these two defendants conspired to retaliate against him for filing verbal grievances against Charles Goree. Plaintiff alleges that Michelle Goree's false accusations against him were the result of the conspiracy and motivated by the verbal reprimand her husband had received.

After he was fired, Plaintiff again exercised his First Amendment rights and verbally complained about the termination of his prison job to his unit team staff members, Lonnie Lawson, Tonya Sexton and Vicky Lewis. Plaintiff contends that his unit team staff members interviewed several state employees, including Michelle Goree, who thereby learned that Plaintiff had filed another informal grievance against her husband alleging that she had conspired with him to have Plaintiff terminated from his prison job. After the completion of the administrative investigation, Plaintiff was reinstated to his prison job on July 21, 2011. (*Id.* at 7).

On August 10, 2011, Plaintiff was performing his janitorial duties in the therapy area of NCBH in the presence of witnesses including his two supervisors, Shelly and Cary, and a doctor known to Plaintiff only as "Dr. Tom." Michelle Goree approached Plaintiff waving a condom in the air within inches of his face and yelling, "Next time you got a hard on for my husband, wear this!" She then threw the condom at Plaintiff, hitting him on his hand. Plaintiff states that his supervisors attempted to intervene asking Goree, "What are [you] doing?" and "What's wrong with you?" (*Id.* at 7).

Plaintiff states Shelly told him both she and Dr. Tom had reported Michelle Goree's conduct to their supervisors. Shelly then instructed Plaintiff to go to the meeting area with the rest of the prisoners so that prison officials could pick them up.

When the prison van arrived, Charles Goree left the van and went straight to the NCBH office. Plaintiff described Goree's demeanor as very angry. When Goree returned ten minutes later, he instructed another officer to handcuff Plaintiff and take him immediately to central control. (*Id.* at 8). Plaintiff was interrogated by Defendant Jones to whom he reported his allegations of conspiracy, retaliation and assault and battery. In response, Jones stated, "You're fired, stay away from Lt. Goree and take you ass back to unit when count clears." (*Id.*).

Plaintiff contends that on or after the events of August 10, 2011, State employees at NCBC either filed written reports or spoke verbally to Defendant Jones about Michelle Goree's actions of August 10, 2011. (*Id.* at 9).

On August 19, 2011, Jones summoned Plaintiff to his office and began discussing the incident of August 10, 2011. The interview was interrupted by a telephone call. Plaintiff overheard Jones say, "Oh, Deputy Warden. What's up?" After a pause, Jones stated, "Speaking of Mr. Carrigan, he's right here." Jones then asked Plaintiff to step out of the office. Shortly thereafter, Jones left his office and told guards to "cuff him up, pack his property and take him to central control." (*Id.*) Plaintiff was transferred to James Crabtree Correctional Center (JCCC) where he was placed in disciplinary segregation for thirty-eight days.

During his tenure at JCCC, Plaintiff was interrogated by ODOC internal affairs officer, Defendant Stephanie Burke, who informed him that ODOC had initiated his transfer to JCCC for his own safety. (*Id.* at 10) Nevertheless, he was left in the disciplinary special housing unit. Burke did not secure Plaintiff's release from the disciplinary housing unit into the general population at JCCC. Thereafter, Plaintiff was transferred to a minimum security facility at Jess Dunn Correctional Center. (*Id.* at 10).

## ANALYSIS

### I. Defendant Hoffman's Motion to Dismiss

Defendant Hoffman seeks dismissal of the claims against her, contending that Plaintiff's claims are barred by the applicable statute of limitations, that she is entitled to Eleventh Amendment immunity,[6] and that Plaintiff has failed to adequately allege she personally participated in the alleged constitutional violations.

Defendant Hoffman's motion to dismiss should be granted based on Plaintiff's failure to plead sufficient facts demonstrating that Hoffman personally participated in the alleged retaliation against Plaintiff. A defendant in a civil rights action can be held liable for claims brought against her in her individual capacity pursuant to § 1983 only if she personally participated in the alleged constitutional violation. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). Furthermore, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citing *Monell v. New*

---

[6] Because Plaintiff has sued all defendants in their individual capacities, Eleventh Amendment immunity is not applicable to any of the defendants in this action. Eleventh Amendment immunity is available only to defendants sued in their official capacities.

8

*York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). In *Iqbal*, the Court further declared that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Thus, a government official "is only liable for his or her own misconduct." *Id.* at 677. A defendant-supervisor may be held liable under § 1983 if the defendant-supervisor "creates, promulgates, implements, or in some way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which subjects, or causes to be subjected' th[e] plaintiff 'to the deprivation of any rights . . . secured by the Constitution.'" *Dodds v. Richardson*, 614 F.3d 1185, 1199 (quoting 42 U.S.C. § 1983) (2011). "A plaintiff may therefore succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* at 1200.

Plaintiff has failed to allege any facts demonstrating that Hoffman personally participated in any of the retaliatory acts leading to the loss of his prison job or to the retaliatory transfer to the disciplinary segregation unit of JCCC. Moreover, Plaintiff has not alleged sufficient facts to support a claim against Hoffman based on her supervision of Michelle Goree. Accordingly, it is recommended that the claims against Trudy Hoffman be dismissed without prejudice.

## II. Defendant M. Goree's Motion to Dismiss

Michelle Goree does not challenge Plaintiff's factual allegations against her. Rather, she contends that the applicable statute of limitations bars some of Plaintiff's claims.

"In a § 1983 action, state law governs issues regarding the statute of limitations and tolling . . . ." *Braxton v. Zavaras*, 614 F.3d 1156, 1159 (10th Cir. 2010). The law governing a determination of the timeliness of Plaintiff's action is long-settled. "State statutes of limitations applicable to general personal injury claims supply the limitations periods for § 1983 claims, but federal law governs the time of accrual of § 1983 claims." *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999) (citations omitted). Here, Oklahoma's two-year statute of limitations applies to Plaintiff's claims. *See Meade v. Grubbs*, 841 F.2d 1512, 1522 (10th Cir. 1988); Okla. Stat. tit. 12, § 95(A)(3). "Since the injury in a § 1983 case is the violation of a constitutional right, such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Beck*, 195 F.3d at 557 (quotation omitted).

First, Plaintiff contends that on or before July 7, 2011, Michelle Goree conveyed false information about Plaintiff to a supervisor at NBHC with the intention of causing Plaintiff to be terminated from his prison work assignment.[7] Plaintiff's original Complaint was filed on August 8, 2013, thus his claims against Michelle Goree based on her retaliatory conduct on July 7, 2011, are barred by the statute of limitations and should be dismissed with prejudice.

---

[7] Plaintiff's recitation of the facts confirm that he learned on July 7, 2011, that Defendant M. Goree had informed a supervisor known only to Plaintiff as "Jayno" that Plaintiff was "a king pin drug dealer at the prison." (Second Amended Complaint at 6).

But Goree further contends that Plaintiff's claims of retaliatory conduct on her part which ultimately resulted in Plaintiff losing his prison job on August 10, 2011, and being transferred to disciplinary segregation thereafter, are barred by the statute of limitations. Goree theorizes that because the motive for her retaliatory actions was based on her husband's having been disciplined in April 2011, the limitations period should have begun to run on that date. But regardless of the exact date Goree became motivated to take retaliatory action against Plaintiff, the fact remains that her actions on August 10, 2011, directly resulted in Plaintiff's termination from his prison job and his transfer to the disciplinary housing unit at JCCC. This claim against Goree is not barred by the statute of limitations. Moreover, Plaintiff's Second Amended Complaint has facial plausibility because Plaintiff has pled sufficient facts from which this Court can draw the reasonable inference that Michelle Goree is liable for conspiracy with Charles Goree to take retaliatory action against Plaintiff, in violation of his First Amendment right to access the prison grievance system.

Plaintiff has included a pendant state law claim of assault and battery based on Michelle Goree's having waived a condom in his face, ultimately striking his arm, on August 10, 2011. Goree does not address the timeliness of this claim. The undersigned notes, however, that under Oklahoma law, the limitations period for assault and battery is one year. *See* Okla. Stat. tit. 12, § 95(4) (limitation period is one (1) year: for an action for assault or battery). The pendant state law claim against M. Goree based on her having assaulted and battered Plaintiff is barred by the statute of limitations and should be dismissed with prejudice.

In sum, Plaintiff's allegations regarding Michelle Goree's conspiracy to retaliate as evidenced by her actions on August 10, 2011, are sufficient to state a timely claim. Whether Michelle Goree was conspiring with her husband to retaliate against Plaintiff for exercising his First Amendment rights, is a question of fact that cannot be resolved on a motion to dismiss. As to this claim, it is recommended that Michelle Goree's Motion to Dismiss be denied. Plaintiff's pendant state claim for assault and battery should be dismissed, as it is barred by the applicable statute of limitations.

### III. Motion to Dismiss of Defendants C. Goree, Warden William Monday, Chief Sam Jones, and Internal Affairs Officer Stephanie Burke

Defendants Lieutenant Charles Goree, Warden William Monday, Chief Sam Jones, and Internal Affairs Officer Stephanie Burke have filed a joint motion to dismiss. Because of the disparity in the complaints against these defendants, Charles Goree's motion will be considered separately.

Plaintiff's factual allegations are not disputed. Accepting Plaintiff's factual allegations as true, Charles Goree engaged in a pattern of harassing Plaintiff from April 2011 through August 2011. Plaintiff avers that he lodged verbal grievances to prison officials against Goree, and that Goree was "spoken to" on one occasion and verbally reprimanded on another occasion. Plaintiff's accusation of conspiracy to retaliate against him exiting between Charles Goree and his wife Michelle Goree is plausible. Plaintiff alleges that Michelle Goree was responsible for the loss of his prison job on July 7, 2011, when she told supervisors at NBHC that Plaintiff was a king pin drug dealer in the prison. The truth of Plaintiff's accusations is supported by the fact that, upon investigation, Plaintiff was reinstated July 21, 2011. As discussed above, the limitations

period has expired as to the July 7, 2011 firing. But Michelle Goree's seemingly unprovoked conduct on August 10, 2011, led directly to the loss of Plaintiff's prison job for a second time and his transfer to the disciplinary unit of a medium security prison on September 26, 2011. Whether Charles Goree was conspiring with his wife to cause the retaliatory termination of Plaintiff's job and transfer to JCCC is a question of fact that cannot be resolved on a motion to dismiss. As the latter two claims are not barred by the statute of limitations, it is recommended that Charles Goree's Motion to Dismiss be denied.

The remaining defendants contend that Plaintiff's claims against them are barred by the statute of limitations. Plaintiff filed his original Complaint on August 8, 2013. But he did not name these defendants until he filed his first Amended Complaint on December 9, 2013, after the applicable statute of limitations had expired. Moreover, Plaintiff never served any of these three defendants with the Amended Complaint. It was not until Plaintiff filed his Second Amended Complaint that Monday, Jones and Burke were effectively added as defendants. They were served with the Second Amended Complaint shortly thereafter. The claims against these defendants are untimely unless the Second Amended Complaint relates back to the date of the original Complaint was filed.

Rule 15(c) of the Federal Rules of Civil Procedure governs the relation back of amendments to pleadings. The section of Rule 15 relevant to this case is Rule 15(c)(1)(C):

> (c) Relation Back of Amendments.
>
> (1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
>
> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15. In this case, the claims against the newly named parties arose from the same conduct, transaction or occurrence set out in the original pleading. Plaintiff has not, however, demonstrated that the three defendants brought into the action by his Second Amended Complaint received notice of the action and knew or should have known that the action would have been brought against them, but for a mistake concerning the proper party's identity. Here, there was no mistake in identity of any of these three defendants.

Because Plaintiff's Second Amended Complain does not relate back to the date he filed his original Complaint, the claims against Defendants Monday, Jones and Burke

should be dismissed with prejudice as barred by the expiration of the statute of limitations.

## RECOMMENDATION

After a thorough review of the record and the briefs of the parties, the undersigned recommends the following actions:

A. The Motion to Dismiss of Defendant Trudy Hoffman **(ECF No. 46)** should be **GRANTED** based on her lack of personal participation in the alleged constitutional violations.

B. The Motion to Dismiss of Defendant Michelle Goree **(ECF No. 47)** should be **GRANTED** as to Plaintiff's pendant state law claim of assault and battery and the constitutional claim of retaliation based on her actions in July 2011 as these claims are barred by the applicable statute of limitations. Michelle Goree's Motion to Dismiss should be **DENIED** as to Plaintiff's claim that she conspired with her husband to retaliate against Plaintiff, as evidenced by her conduct on August 10, 2011.

C. The Motion to Dismiss of Defendant Charles Goree **(ECF No. 49)** should be **DENIED** as to the claims of conspiracy with his wife to retaliate against Plaintiff based on events transpiring on August 10, 2011, which Plaintiff claims were motivated by his having filed oral grievances against Charles Goree.

D. The Motion to Dismiss of Defendants Monday, Jones and Burke **(ECF No. 49)** should be **GRANTED** as Plaintiff's claims against these defendants are barred by the statute of limitations.

**NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by **December 29, 2014**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

This Report and Recommendation does not dispose of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED on December 10, 2014.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE