IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHAD A. CARRIGAN, | ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | Case No. CIV-13-842-D |
| MACHEAL GOREE,[1] LT. GOREE,[2] et al., | ) ) ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

This action was referred to the undersigned magistrate judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C), regarding Plaintiff's 42 U.S.C. § 1983 civil rights complaint. Two motions are pending before this Court: Defendant Michelle Goree's motion to dismiss for failure to state a claim upon which relief may be granted (ECF No. 66), and Defendant Charles Goree's motion to dismiss for failure to state a claim upon which relief may be granted (ECF No. 67). Plaintiff has not responded to either motion. For the reasons set forth below, it is recommended that both motions be **GRANTED** as Plaintiff has failed to exhaust his administrative remedies as to his allegations of conspiracy against Defendants Goree to retaliate against him for filing grievances.

I.  BACKGROUND

Plaintiff contends his civil rights were violated while he was incarcerated in the William S. Keys Correctional Center (WSKCC), an Oklahoma Department of Corrections

---
[1] Defendant's first name is spelled "Michelle." (ECF No. 66).
[2] Defendant FNU Goree's first name is Charles. (ECF No. 67).

(ODOC) facility in Fort Supply, Oklahoma.[3] During his tenure at WSKCC, Plaintiff was assigned to work at the Northwest Center for Behavioral Health (NCBH) where he performed housekeeping tasks under the direct supervision of two employees of the NCBH, known to Plaintiff only as "Shelly" and "Cary," and who, in turn, were supervised by an NCBH employee known to Plaintiff only as "Jayno."

On December 10, 2014, the undersigned magistrate judge submitted a Report and Recommendation to Judge Timothy DeGiusti, the referring District Court Judge, recommending that claims against all defendants, but for Defendants Michelle and Charles Goree, be dismissed for failure to state a claim upon which relief could be granted. The District Court adopted the Report and Recommendation on January 20, 2015. The remaining claims against Defendants Michelle and Charles Goree are based on Plaintiff's allegations that these two defendants conspired to retaliate against him for exercising his First Amendment right to access the prison grievance procedure to complain of Defendant Charles Goree's pattern of harassment against him. Plaintiff contends this conspiracy resulted in loss of his prison job and a retaliatory transfer to the special housing unit of a different facility.

---

[3] When Plaintiff filed his Second Amended Complaint, (ECF No. 40), he was a state prisoner incarcerated at the Lexington Correctional Center. On December 26, 2013, Plaintiff supplied the court with his new address at the Howard McCloud Correctional Center (HMCC) in Atoka, Oklahoma. On December 22, 2014, this Court mailed a copy of the first Report and Recommendation [ECF No. 56] to Plaintiff at HMCC, but the mail was returned as undeliverable. [ECF No. 57]. Plaintiff has not supplied the court with an updated address. Additionally, because Plaintiff has not responded to either of the pending motions, the unopposed motions may, in the court's discretion, be deemed confessed. *See* LCvR7.1(g).

## II. PLAINTIFF'S FACTUAL ALLEGATIONS

At all times relevant to this action, Defendant Charles Goree was an officer at WSKCC, and his wife, Defendant Michelle Goree, was an employee at NCBH, where Plaintiff worked at his prison job as a janitor.

The crux of Plaintiff's Second Amended Complaint is that Defendants Charles Goree and his wife, Michelle Goree, conspired to cause him to be fired from his prison job and ultimately transferred to the disciplinary special housing unit of a medium-security prison in retaliation for Plaintiff's having exercised his First Amendment right to seek relief, through the prison grievance system, from Charles Goree's harassment. Plaintiff specifically alleges that Defendants Charles and Michelle Goree conspired to retaliate against him after Charles Goree received an oral reprimand from prison officials as a result of Plaintiff's informal request to staff. Plaintiff alleges the retaliatory conduct of Michelle Goree was directly responsible for his being fired from his prison job and transferred to a different facility.

Plaintiff alleges that Charles Goree's inappropriate actions began on April 15, 2011, just before Plaintiff and his mother were to have a "level class 4" visitation. (ECF No. 40:4). Plaintiff states that Charles Goree approached Plaintiff's mother and asked, "What kind of drugs are you bringing your son today?" (*Id.*). Within three days of this incident, Plaintiff verbally complained to his unit team staff members, Lonnie Lawson, Tonya Sexton and Vicky Lewis. Plaintiff believes that after his report to his unit team staff members, one of his unit team members or some other prison official spoke to Goree about the reported incident. Plaintiff concluded that his informal attempt to

3

resolve the conflict with Charles Goree had been successful because for two months, Goree did not interact with him. But on June 25, 2011, Goree stopped Plaintiff and conducted a pat-down search and acted as though he had discovered and retrieved a baggie containing what appeared to be marijuana. When Goree showed the baggie to Plaintiff, and Plaintiff denied that the contraband was his, Goree replied, "It's not? But it could be that easy. I'm going to get you one day." (*Id.* at 5).

On June 28, 2011, within three days of Goree's pat-down search and threat, Plaintiff again verbally complained to his unit team members. The unit team told him that Goree would be instructed to stop bothering him. (*Id.*). On June 30, 2011, Plaintiff's case manager, Ms. Lewis, asked Plaintiff whether Goree was still bothering him. When Plaintiff answered no, Ms. Lewis stated, "It's because he was issued a verbal reprimand for his actions and instructed to stay away from you." (*Id.*).

On July 7, 2011, Plaintiff was abruptly terminated from his prison work assignment at NCBH. According to Plaintiff, Shelly, one of his supervisors at NCBH, told him, "Today is your last day with us." (*Id.*). When Plaintiff asked her why, Shelly initially stated that she was not allowed to tell Plaintiff why, but then added, "They're doing you so wrong." Ultimately, Shelly told Plaintiff that Defendant Michelle Goree had informed a supervisor named Jayno that Plaintiff was "a kingpin drug dealer at the prison." Shelly told Plaintiff that he could finish working the rest of the day. (*Id.* at 6).

Plaintiff states that before he was fired on July 11, 2011, he did not know Michelle Goree worked at NCBH or that she was Charles Goree's wife. Given the sequence and timing of events, however, Plaintiff plausibly alleges that on or before

4

July 7, 2011, these two defendants conspired to retaliate against him for filing verbal grievances against Charles Goree. Plaintiff alleges that Michelle Goree's false accusations against him were the result of the conspiracy and motivated by the verbal reprimand her husband had received.

After he was fired, Plaintiff again exercised his First Amendment rights and verbally complained about the termination of his prison job to his unit team staff members, Lonnie Lawson, Tonya Sexton and Vicky Lewis. Plaintiff contends that his unit team staff members interviewed several state employees, including Michelle Goree, who thereby learned that Plaintiff had filed another informal grievance against her husband alleging that she had conspired with him to have Plaintiff terminated from his prison job. After the completion of the administrative investigation, Plaintiff was reinstated to his prison job on July 21, 2011. (*Id.* at 7).

On August 10, 2011, Plaintiff was performing his janitorial duties in the therapy area of NCBH in the presence of witnesses including his two supervisors, Shelly and Cary, and a doctor known only to Plaintiff as "Dr. Tom". Michelle Goree approached Plaintiff waving a condom in the air within inches of his face and yelling, "Next time you got a hard on for my husband, wear this!" She then threw the condom at Plaintiff, hitting him on his hand. Plaintiff states that his supervisors attempted to intervene asking Goree, "What are [you] doing?" and "What's wrong with you?" (*Id.* at 7). Plaintiff states Shelly told him both she and Dr. Tom had reported Michelle Goree's conduct to their supervisors. Shelly then instructed Plaintiff to go to the meeting area with the rest of the prisoners so that prison officials could pick them up.

When the prison van arrived, Charles Goree left the van and went straight to the NCBH office. Plaintiff described Goree's demeanor as very angry. When Goree returned ten minutes later, he instructed another officer to handcuff Plaintiff and take him immediately to central control. (*Id.* at 8). Defendant Jones, to whom Plaintiff reported his allegations of conspiracy, retaliation and assault and battery, responded, "You are fired, stay away [from] Lt. Goree and take your ass back to unit when count clears." (*Id.*).

Plaintiff believes that on or after the events of August 10, 2011, State employees at NCBH either filed written reports or spoke verbally to Defendant Jones about Michelle Goree's actions of August 10, 2011. (*Id.* at 9).

On August 19, 2011, Jones summoned Plaintiff to his office and began discussing the incident of August 10, 2011. The interview was interrupted by a telephone call. Plaintiff overheard Jones say, "Oh, Deputy Warden. What's up?" After a pause, Jones stated, "Speaking of Mr. Carrigan, he's right here." Jones then asked Plaintiff to step out of the office. Shortly thereafter, Jones left his office and told guards to "cuff him up, pack his property and take him to central control." (*Id.*) Plaintiff was transferred to the James Crabtree Correctional Center (JCCC) where he was placed in disciplinary segregation for thirty-eight days.

## III. ANALYSIS

### A. Standard of Review

To survive a motion to dismiss, a complaint must set forth factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff need not detail factual allegations in the complaint, but must provide the grounds of entitlement to relief, which entails more than labels and conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. When considering a motion to dismiss, courts look to the complaint and those documents attached to or referred to in the complaint, accept as true all allegations contained in the complaint, and draw all reasonable inferences from the pleading in favor of the pleader. *Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008); *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). A court, however, is not bound to accept as true a plaintiff's legal assertions. *Iqbal*, 556 U.S. at 678. Although the court is required to exercise a liberal interpretation of plaintiff's pleadings, *Haines v. Kerner*, 404 U.S. 519 (1972), the court need not assume the role of advocate for plaintiff, and he must present more than conclusory allegations to survive a motion to dismiss for failure to state a claim. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Id.* (citing cases). "[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Id.* With these standards in mind, the court turns to the merits of the defendants' motions.

### B. Motions to Dismiss of Michelle and Charles Goree

Michelle and Charles Goree have never challenged Plaintiff's factual allegations in their pleadings. For the first time in their second motions to dismiss, defendants raise the affirmative defense of failure to exhaust administrative remedies, a prerequisite to filing suit imposed by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (failure to exhaust administrative remedies is an affirmative defense under the PLRA). The exhaustion requirement is mandatory and "unexhausted claims cannot be brought in court." *Id.* at 211.

Defendants rely upon materials outside the pleadings, specifically those attached to the court-ordered Special Report (ECF No. 65)[4] in support of their motions, while simultaneously urging the court not to convert their motions to motions for summary judgment as generally required by Fed. R. Civ. P. 12(d) ("If, on a motion under 12(b)(6)…, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

---

[4] Special Reports are also referred to as *Martinez* Reports. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (approving practice of district courts' ordering government officials to prepare a report to be included with the pleadings when a prisoner/plaintiff alleges a constitutional violation by such officials).

8

The Tenth Circuit Court of Appeals has recognized that "[g]enerally, the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (quoting *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010) ("The district court's disposition of the complaint was irregular. Although it characterized its action as a dismissal for failure to state a claim, the court did not restrict itself to looking at the complaint.")). *Gee* identified three limited exceptions to the general rule restricting a court's consideration to the pleadings alone when deciding the merits of a motion to dismiss: (1) documents the complaint incorporates by reference or attached as exhibits to the complaint, (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity, and (3) matters of which a court may take judicial notice. *Id.* "*Martinez* Reports are not within the exception unless the plaintiff challenges a prison's policies or established procedures and the *Martinez* report's description of the policies or procedures remains undisputed after plaintiff has an opportunity to respond." *Id.* (internal quotations and citation omitted). *See also Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992) ("*Martinez* process is designed to aid the court in fleshing out possible legal bases of relief from unartfully drawn pro se prisoner complaints, not to resolve material factual issues").

In addition to the exhaustion materials attached to Plaintiff's Second Amended Complaint, Defendants urge the court to take judicial notice of the grievance procedure for Oklahoma prisoners. Because the Offender Grievance Process, Policy No. OP-090124 is a public document readily available on the Oklahoma Department of Corrections

website, the court may take judicial notice of the grievance process attached to the Special Report. (ECF No. 65-9).

Additionally, Defendants contend the court should consider grievance documents attached to the Special Report. Defendants theorize that the additional documents attached to the Special Report fall under the second exception to the general rule regarding consideration of materials outside the complaint because, they reason, the materials are "central to the plaintiff's claim" in that, if Plaintiff has not exhausted his administrative remedies, his Complaint must be dismissed. (ECF No. 66:11-12); (ECF No. 67:11). The action which Defendants request comes perilously close to making exhaustion of administrative remedies a pleading requirement for this Plaintiff—a notion that was specifically rejected by *Jones*:

> Federal Rule of Civil Procedure 8(a) requires simply a "short and plain statement of the claim" in a complaint, while Rule 8(c) identifies a nonexhaustive list of affirmative defenses that must be pleaded in response. The PLRA itself is not a source of a prisoner's claim; claims covered by the PLRA are typically brought under 42 U.S.C. § 1983, which does not require exhaustion at all[.]

*Jones v. Bock*, 459 U.S. 199 at 212, (internal citation omitted). There are several factors, however, which militate towards allowing Defendants to rely on exhaustion-related materials attached to the Special Report. First, the materials are relevant to determining whether Plaintiff has exhausted his administrative remedies—a prerequisite for bringing suit in a federal court. Moreover, Plaintiff, by attaching some exhaustion materials to his Second Amended Complaint, has demonstrated his awareness of the exhaustion requirement and his ability to follow the grievance process, at least in part.

The additional materials attached to the Special Report offer a complete view of Plaintiff's attempt to exhaust administrative remedies. Finally, Plaintiff has not responded to Defendants' motions to dismiss, and because the Plaintiff has not informed this Court of his current address, Defendants' motions should be deemed confessed pursuant to local rule LCvR 7.1(g).

### C. The Grievance Process

The ODOC Offender Grievance Process, OP–090124, governs Plaintiff's exhaustion of administrative remedies. (ECF 65-9). The Grievance Process has three primary phases: (1) an informal phase which requires an inmate to speak to a staff member and, if necessary, submit a written Request to Staff; (2) a formal stage which requires the inmate to submit a written grievance; and (3) an appeal stage which requires the inmate to appeal a grievance denial to the Administrative Review Authority or Chief Medical Officer. The appeal stage is the final stage and, once completed, constitutes satisfaction of the Grievance Process. *See* Grievance Process, ¶¶ IV, V and VII. (ECF No. 65-95-12). Each phase of the Grievance Process contains certain time limitations. A Request to Staff must be submitted within 7 calendar days of the incident. The written grievance must be submitted within 15 calendar days of the incident or the date of the response to the Request to Staff, whichever is later. Finally, the appeal must be submitted within 15 calendar days of receipt of the reviewing authority's response to the grievance. *See* Grievance Process, ¶¶ IV(B)(2), V(A)(1) and VII(B).2. (ECF No. 65-9:6-8).

### D. Plaintiff's Attempts to Exhaust his Administrative Remedies

Attached as exhibits to Plaintiff's Amended Complaint are several Requests to Staff and grievance forms. First, Plaintiff has attached two Requests to Staff, both dated August 12, 2011, and both directed to Chief Jones, Chief of Security. For relief, Plaintiff requested Jones to "investigate this and take the proper steps, and let me know what actions were taken." (ECF No. 40-1; 40-2). On September 13, 2011, Plaintiff filed an Offender Grievance Report Form stating that he had received no answer to the Requests to Staff allegedly sent to Jones. (ECF No. 40-7). The Response stated, "Chief Jones did not receive any Requests to Staff from you as claimed in your grievance." (ECF No. 40-6). Plaintiff took no further action.

On September 23, 2011, Plaintiff submitted two Requests to Staff to the warden at WSKCC, asking that the incident involving Defendants Michelle and Charles Goree be investigated. The Warden denied relief on September 30, 2011, stating that pursuant to OP-090124 section 11.B.3, requests for disciplinary action against staff "will not be addressed through the grievance process." (ECF No. 40-8). The warden's response to the second Request to Staff stated the obvious fact that Plaintiff's request had previously been denied and warned Plaintiff he was coming dangerously close to being placed on restriction for abuse or misuse of the process. (ECF No. 40-9).

The remaining two Requests to Staff are directed to the law library at JCCC and answered by an inmate law clerk, Victor Rose. Because Mr. Rose is not a staff member, these documents should not be considered in determining the exhaustion issue. (ECF No. 40-10; 40-11).

Documents attached to the Special Report demonstrate that Plaintiff never completely exhausted administrative remedies. On August 19, 2011, Plaintiff filed a Request to Staff to V. Lewis, Case Manager at JCCC. Plaintiff asked to know why he had been transferred to the special housing unit (SHU) at JCCC from the minimum security WSKCC. The disposition stated, "This office was directed to prepare a transfer packet for your transfer to JCCC pending investigation. This directive was made by [the] divisional office and was complied with." (ECF No. 65-14:2-3). Plaintiff submitted a grievance to the Warden of WSKCC on October 4, 2011, apparently appealing the denial of his Request to Staff. (ECF No. 65-14:4). The Warden replied:

> WKCC falls under the jurisdiction of the Division of Institutions and as the warden of WKCC I am expected to comply with the directives of that office. Additionally, it is not my place to argue against or question the decisions and/or directives made by the Division of Institutions. Therefore, when I received the directive to prepare a transfer packet for your transfer to JCCC, I complied. I have no additional insight or knowledge about your transfer or confinement in maximum security (SHU) and therefore cannot provide the explanation you are seeking regarding this matter.

(ECF No. 65-14:5). On October 27 and October 28, 2011, Plaintiff sent two similar grievance appeals to the Administrative Review Authority (ARA), again complaining he had been transferred to the SHU at JCCC when he had done nothing wrong. (ECF No. 65-14:6-11). The ARA responded on November 1, 2011, returning the appeals unanswered because Plaintiff had submitted the appeal twice. Plaintiff was offered one final chance to submit the appeal correctly. (ECF No. 65-14:12).

On December 20, 2011, Plaintiff submitted an Offender Grievance Report Form to the ARA describing the incident at WSKCC and asking that the issue be addressed. Additionally, Plaintiff requested that Ed Evans be compelled to answer his grievances. (ECF No. 65-15:2). The ARA returned the appeal unanswered because Plaintiff had failed to attach Requests to Staff, because more than one issue was raised, and because the appeal was untimely. (ECF No. 65-15:4).

On February 1, 2012, Plaintiff filed an Offender Grievance Report Form to the ARA asking that a grievance submitted to Ed Evans be answered. (ECF No. 65-12:2). On February 14, 2012, the ARA returned the grievance unanswered because Mr. Evans "is not the appropriate staff to whom to submit a grievance." (ECF No. 65-12:5).

Examination of the documents pertaining to Plaintiff's attempt to exhaust administrative remedies demonstrates that Plaintiff never properly followed through all steps of the grievance process. This issue is dispositive. Therefore, Defendants' alternative grounds for dismissal need not be addressed. Accordingly, Defendants' motions to dismiss should be granted.

## RECOMMENDATION

After a thorough review of the record and the briefs of the parties, the undersigned recommends Defendants' Motions to Dismiss **(ECF Nos. 66, 67)** be **GRANTED**.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by **June 23, 2015**. The parties are

further advised that failure to make a timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** on June 5, 2015.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE